# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aaron Dalton, | Case No. 0:19-cv-522 (SRN/DTS) |
| Plaintiff, | |
| v. | |
| JJSC Properties, LLC, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Padraigin Browne, Browne Law LLC, 8530 Eagle Point Blvd., Ste. 100, Lake Elmo, Minnesota 55042, for Plaintiff.

Amy M. Sieben and Bradley D. Fisher, Fisher Bren & Sheridan LLP, 920 Second Ave. S., Ste. 975, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

Before the Court is the Motion to Dismiss [Doc. No. 3] filed by Defendant JJSC Properties, LLC ("JJSC"), and the Motion for Summary Judgment [Doc. No. 13] filed by Plaintiff Aaron Dalton ("Dalton"). For the reasons set forth below, Defendant's motion is granted in part as to dismissal, and denied in part as to costs, and Plaintiff's motion is denied.

## I.    BACKGROUND

### A.  Factual Background

Dalton, a resident of Burnsville, Minnesota, suffers from cerebral palsy and uses a wheelchair for mobility, as well as a van with a wheelchair lift. (Browne Decl. [Doc. No. 16], Ex. B (Dalton Dep.) at 5, 10–11, 15, 19–21.)  JJSC owns the Grand Wheeler Sinclair service

and gas station located at 1345 Grand Avenue in St. Paul, Minnesota. (Def.'s Ex. A [Doc. No. 5-1] (Brost Aff.) ¶ 4.) The gas station was built in 1960, prior to the enactment of the Americans with Disabilities Act ("ADA"), and has not been remodeled. (*Id.* ¶ 3.)

On January 16, 2019, Dalton and his roommate, Scott Smith, were driving in St. Paul, Minnesota, looking for a restaurant, when they became lost. (Browne Decl., Ex. B (Dalton Dep.) at 34–35.) Dalton testified at his March 29, 2019 deposition that he and Smith "needed somewhere to pull over and look at Google Maps, and it just happened to be the [Grand Wheeler Sinclair] gas station." (*Id.* at 35.) He testified that there was no other reason for stopping at the station, and that he had never visited it before. (*Id.* at 42–43.) Dalton and Smith did not exit the van, but stopped in the gas station's parking lot. (*Id.* at 40.) Dalton, who has filed 44 ADA accessibility discrimination suits in the District of Minnesota, (*id.* at 27), noticed that there was no signage for an accessible parking spot. (*Id.* at 40.) Also, although there was snow on the ground, Dalton testified that he could not see any painted lines marking an accessible parking spot. (*Id.*) Prior to departing the parking lot, he and Smith took photographs of the site from their vantage point inside the van. (*Id.* at 42.) In an April 8, 2019 declaration filed in support of his summary judgment motion, Dalton states that when he visited the station on January 16, he "did not feel comfortable parking and exiting my vehicle based on the conditions I observed." (Dalton Decl. [Doc. No. 17] ¶ 5.)

Approximately two weeks later, Smith filed suit against Defendant in Ramsey County District Court for violations of the ADA, 42 U.S.C. §§ 12101, and the ADAAG, for which he seeks injunctive relief. (*See* Compl. [Doc. No. 1-2].) Defendant removed the case to federal court on March 4, 2019. (Notice of Removal [Doc. No. 1].)

Dalton alleges that when he "attempted to visit the gas station," he found no reserved accessible parking spots and no reserved van parking spaces, in violation of ADAAG 208.2 and 208.2.4. (Compl. ¶¶ 18(a)-(b).) He states that these barriers are "not to be considered all-inclusive of the barriers and violations" of the ADA that he encountered or which exist at the station. (*Id.* ¶ 19.) Dalton alleges that he "attempted to access Defendant's premises but could not do so independently on a full and equal basis" due to the physical barriers to access. (*Id.* ¶ 17.) Further, he alleges that these barriers deter him from visiting Grand Wheeler Sinclair in the future. (*Id.* ¶ 16.)

In February 2019, JJSC retained Julee Quarve-Peterson as an expert to conduct an accessibility review of the gas station and to make recommendations on its behalf. (Def. Ex. C [Doc. No. 5-3] (Quarve-Peterson Rpt.) ¶¶ 2–3.) Ms. Quarve-Peterson, an Accessibility Specialist certified by the State of Minnesota since 1996, has served as an expert consultant or witness in hundreds of ADA cases involving allegations of noncompliant architectural barriers. (Supp'l Quarve-Peterson Aff. [Doc. No. 28] ¶ 3.) From the Complaint, she noted that Dalton had identified a lack of any reserved accessible parking spaces and a lack of any spaces reserved as van parking spaces. (Def. Ex. C1 [Doc. No. 5-3] (JQP Inc. Accessibility Complaint Response) at 1.) Following her February 2019 inspection, Ms. Quarve-Peterson recommended that Defendant provide a minimum of one designated accessible parking space with an adjacent access aisle, and that the newly designated space include "van accessible" signage. (*Id.* at 6.)

Ms. Quarve-Peterson returned to the site on March 4, 2019 to verify that JJSC had properly addressed her recommendations. (Def. Ex. C (Quarve-Peterson Aff.) ¶ 5.) She

3

found that Defendant had implemented her recommendations, to the extent possible in March 2019, by designating an accessible parking space and access aisle and placing signage in the accessible spot. (*Id.* ¶ 6.) Ms. Quarve-Peterson noted that painting the surfaces of the access aisle and parking spot was not possible at that time, due to the presence of snow on the ground. (*Id.* ¶ 7.)

Dalton revisited the Grand Wheeler Sinclair station on March 12, 2019. (Dalton Decl. ¶ 10.) He states that he could not safely exit his vehicle based on the conditions that he observed, including a lack of stripes or boundaries of an accessible parking spot, and the presence of a car parked directly in front of the accessible parking sign and the "no parking" sign, blocking access. (*Id.* ¶ 11–13.)

On Plaintiff's behalf, Peter Hansmeier visited Grand Wheeler Sinclair on April 3, 2019. (Hansmeier Decl. [Doc. No. 18] ¶ 2.) Hansmeier does not indicate his role with respect to this litigation, nor does he provide any information concerning his training and expertise. However, based on his involvement in similar cases, he appears to be a member of Plaintiff's counsel's staff. *See Dalton v. Simonson Station Stores, Inc.*, 017-CV-4427 (SRN/LIB), 2019 WL 3243257, at *3 (D. Minn. July 18, 2019). At the time of Hansmeier's April 3 visit, he noted that no painted stripes demarcated the accessible parking space and its adjacent access aisle. (Hansmeier Decl. ¶ 2.)

On April 23, 2019, Ms. Quarve-Peterson conducted a follow-up visit to the gas station. (Supp'l Quarve-Peterson Aff. ¶ 7.) She and a colleague took photographs on that visit which show a van accessible sign, designated accessible parking sign, a striped access aisle, and an

accessible parking spot demarcated with white paint.  (*Id.*, Ex. A-2 [Doc. No. 28-2] (Status

Update & Photographs).)

### B.  Defendant's Motion to Dismiss

In its motion to dismiss under Rule 12(b)(1), JJSC argues that it has permanently

remedied the ADA violations alleged in the Complaint, rendering Dalton's claims moot.

(Def.'s Am. Mem. [Doc. No. 25] at 6–9.)   In addition, JJSC asserts that Plaintiff lacks

standing to bring this action.  (*Id.* at 9–12.)  Defendant argues that Dalton has not suffered

an injury in fact.  JJSC notes that Plaintiff has admitted that he never attempted to access

the goods or services at Grand Wheeler Sinclair, nor is there any evidence that he intends

to return to the station to utilize its goods or services.  (*Id.*)  Defendant argues that because

no live case or controversy exists, and because Plaintiff has not demonstrated that he

suffered an injury in fact, the Court lacks subject matter jurisdiction over this matter. (*Id.*

at 9–13.)   Finally, JJSC argues that if the Court dismisses Plaintiff's Complaint with

prejudice, it is entitled to an award of costs.  (*Id.* at 12.)

Plaintiff, however, argues that this matter is not moot because JJSC has failed to

provide all of the requested relief.  (Pl.'s Opp'n [Doc. No. 29] at 4–8.)  Citing ADAAG

502 in the Complaint, Dalton alleges that he "requires accessible parking spaces which

comply with all elements of 502 (including location, width, length, signage, slope, and

presence to an access aisle)."  (*Id.*) (citing Compl. ¶¶ 18–19.) He points to Ms. Quarve-

Peterson's acknowledgement that certain slopes in the parking lot are not compliant with

the ADAAG.  (*Id.* at 6 n.2.)  Accordingly, he argues that because Defendant has not

provided him with all of his requested relief, the case is not moot.  (*Id.*)

As to standing, Dalton contends that his injury in fact "is established by the fact that [he] visited Defendant's gas station but was unable to find anywhere to park on account of Defendant's lack of accessible parking spaces." (*Id.* at 8.)  He further contends, "[a]s a result of the lack of accessible parking, [he] was unable to park and enter Grand Wheeler Sinclair independently and safely." (*Id.* at 9.)  Dalton maintains that his reason for visiting the station is irrelevant to the threat of future harm.  (*Id.* at 10.)  And regardless of the reason for his visit, Plaintiff maintains that even if he visited the parking lot merely to test for ADA violations, he would still have standing.  (*Id.* at 9.)

## C.  Plaintiff's Summary Judgment Motion

In support of his motion for summary judgment, Plaintiff again asserts that he has demonstrated the existence of an injury in fact.  (Pl.'s Mem. [Doc. No. 15] at 6.)  He notes that when he visited the Grand Wheeler Sinclair station on January 16, he was unable to find an accessible parking space, (*id.*), although he also states, "The lack of accessible parking made it more dangerous and difficult for [him] to transfer between his vehicle and the parking lot." (*Id.*)  He also asserts that he is likely to return to the station, as he did on March 12, to view Defendant's progress, and also because of its proximity to other shops, bars, and restaurants.  (*Id.* at 8.)

As of the April 8, 2019 filing of his dispositive motion, Dalton argues that it was undisputed that the Defendant had not painted the accessible parking space and access aisle. (*Id.* at 13–14.)  Additionally, Dalton asserts that a bench located directly in front of the parking area blocks the accessible route to the public toilet, which is located outside of

the station, (*id.* at 20, 24), and that the slopes in the parking space are too steep. (Pl.'s Reply [Doc. No. 31] at 6–9.)

Plaintiff also argues that Ms. Quarve-Peterson's supplemental affidavit should be excluded, except to the extent that it shows JJSC's failure to remediate "the barriers identified in Dalton's complaint." (Pl.'s Mem. at 16.) Among other things, Dalton challenges her methodology, and asserts that she makes several legal conclusions that are inadmissible. (*Id.* at 21–24.)

In opposition, JJSC argues that Dalton not only ignores the modifications made to the property, but argues that the Court should ignore Ms. Quarve-Peterson's unrebutted expert opinion that Defendant has remedied the alleged ADA violations. (Def.'s Opp'n [Doc. No. 27] at 1.) As to alleged violations concerning slopes and an accessible route, JJSC asserts that Plaintiff failed to plead any such violations in the Complaint and, having never encountered these alleged barriers, Dalton lacks standing. (*Id.* at 7–17.)

## II.    DISCUSSION

The ADA prohibits property owners or lessees from discriminating against persons with disabilities by preventing them from fully and equally accessing and enjoying public accommodations. 42 U.S.C. § 12182(a). There appears to be no dispute here that Plaintiff is a person with a disability and that Grand Wheeler Sinclair is a place of public accommodation, leaving the parties to contest the question of whether Defendant discriminated against Plaintiff by denying him full and equal access to the station.

### A. Motion to Dismiss

#### 1. Standard of Review

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts must distinguish between a facial attack and a factual attack to jurisdiction. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citing *Osborn v. United Sates*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, the court's analysis is similar to that under Rule 12(b)(6), in which the court considers the facts as alleged in the pleadings and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. *Id.* In a factual attack, which Defendant presents here, the court may consider matters outside the pleadings, similar to summary judgment, and does not afford the Rule 12(b)(6) safeguards to the nonmoving party. *Id.*

#### 2. Mootness

JJSC makes a factual attack on grounds of mootness, arguing the claims in the Complaint are moot because it has remedied the barriers to accessibility that Dalton identified in the Complaint. (Def.'s Am. Mem. at 5–9.) "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If circumstances change such that "a federal court can no longer grant effective relief, the case is moot." *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam). But "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power

8

to determine the legality of the practice," so when a defendant argues mootness by voluntary conduct, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). A defendant bears a "heavy burden" to show that the claims are moot. *Id.* (citation omitted).

The Court appreciates that as of the filing of Plaintiff's memorandum in support of his summary judgment motion and opposition memorandum to Defendant's motion, either the painting work had not been performed or Dalton was unaware of its completion. (*See* Pl.'s Opp'n at 6.) JJSC's actions are consistent with its announced intention to perform the work, once weather conditions permitted it. Thus, JJSC's designated parking-space and access aisle remediations have moved well past the planning stage and have been implemented.

Dalton argues that portions of Ms. Quarve-Peterson's opinion impermissibly provide a legal opinion on Defendant's compliance with the ADA.[1] (Pl.'s Reply at 21–24.)

---

[1] Plaintiff also argues that the Court should not consider Quarve-Peterson's Supplemental Affidavit, filed on April 29, 2019, as it was filed in connection with Defendant's opposition to Plaintiff's summary judgment motion, and was not referenced in Defendant's Amended Motion to Dismiss. (Pl.'s Opp'n Mem. at 6 n.2.) The Court will consider Ms. Quarve-Peterson's Supplemental Affidavit. *See Davis v. Anthony*, 886 F.3d 674, 677 (8th Cir. 2018) (citing *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (noting that district courts have broad discretion to consider affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1)). Given the overlapping issue of subject matter jurisdiction in the parties' motions, and the timing of the overlapping briefing schedule, combined with weather conditions in the month of April, it is not surprising that JJSC was unable to fully implement its plan to paint the parking space, access aisle, and provide signage until after the initial briefs were filed. Ms. Quarve-Peterson's Supplemental Affidavit, and the exhibits attached to it, constitute the most current evidence concerning the status of the marked areas and signage. Dalton provides no evidence that

But even setting aside her opinion in this regard, Ms. Quarve-Peterson's Supplemental

Affidavit contains photographs taken during her April 23, 2019 visit to the station and a

schematic drawing that denotes the measurements that she took at that time. (Supp'l

Quarve-Peterson Aff., Exs. A-2 (Status Update & Photographs) & A-3 [Doc. No. 28-3]

(Diagram).) The photographs demonstrate the presence of a van accessible sign, a

designated accessible sign, a striped access aisle, and an accessible parking spot marked

with white paint. (Supp'l Quarve-Peterson Aff., Ex. A-2 (Status Update & Photographs)

at 2–6.) Moreover, the photographs depict Ms. Quarve-Peterson's measurements of height

and width. (*Id.*)

Under ADAAG § 502.2, van parking spaces are permitted to be 96 inches wide

where the access aisle is also at least 96 inches wide. JJSC's designated parking spot and

aisle meet these requirements, as Defendant's photographs demonstrate they are both eight

feet wide (96 inches). (*Id.* at 2–3.) Likewise, consistent with ADAAG § 502.3.3, the access

aisle is appropriately marked so as to discourage parking in it. (*Id.*) The photographs also

show the proper signage, at the proper height, consistent with ADAAG 502.6. (*Id.* at 4–6.)

Plaintiff offers no contrary evidence concerning the currently demarcated parking space,

access aisle, and signage. Accordingly, with respect to the designation of an accessible

parking spot, an access aisle, and signage, JJSC has voluntarily ceased its allegedly

---

post-dates it. Since Plaintiff's Complaint seeks injunctive relief, the Court cannot order
Defendant to perform remedial work that it has already performed. For all of these reasons,
the Court will consider Ms. Quarve-Peterson's Supplemental Affidavit and exhibits
thereto.

discriminatory conduct, and demonstrated that these features of its parking lot are compliant with the ADA.

In order to meet the burden of establishing that the "challenged conduct cannot reasonably be expected to start up again," *see Friends of the Earth*, 528 U.S. at 189, Charles Brost, the manager of the Grand Wheeler Sinclair station, avers that Dalton's Complaint was JJSC's first notice of any alleged ADA violations. (Def.'s Ex. A (Brost Aff.) ¶ 7.) He states that JJSC takes ADA compliance seriously, and after receiving the Complaint, it quickly took steps to remedy the complained-of issues. (*Id.* ¶ 8.) It retained Ms. Quarve-Peterson to evaluate any necessary changes to the property. (*Id.*) Approximately two weeks after Defendant received the Complaint, Ms. Quarve-Peterson conducted an inspection of the site. (*Id.*) Based on her recommendations, JJSC immediately added signage, and stated its intent to paint the accessible aisle and parking space, which were then snow-covered, as soon as it was feasible to do so. (*Id.* ¶ 10.) As noted, this work has been done. (*See* Supp'l Quarve-Peterson Aff., Exs. A-2 (Status Update & Photographs) & A-3 (Diagram).) Mr. Brost further attests that JJSC intends to maintain Ms. Quarve-Peterson's recommendations in the future, "as well as to stay abreast of applicable ADA requirements and evaluate the Property on a regular basis to ensure continued ADA compliance." (Def.'s Ex. A (Brost Aff.) ¶ 12.)

In *Davis v. Commander Cos., LLC*, 15-cv-4133 (LIB), this Court considered similar evidence in support of its finding that the challenged conduct was not reasonably expected to occur again. (Def.'s Ex. D [Doc. No. 5-4] (*Davis v. Commander Cos., LLC*, 15-cv-4133 (LIB) (D. Minn. Mar. 6, 2017)) at 21–26.) As is the case here, prior to the litigation, there

was no history of a series of accessibility complaints against the defendants. (*Id.* at 23.)

Moreover, in *Davis*, the defendants' affidavits showed that they took steps to rectify the

alleged ADA violations as soon as possible after learning of them, (*id.* at 25), as JJSC has

done. In addition, the defendants in *Davis* filed an affidavit, agreeing to make every

effort to maintain the parking spot in compliance with the ADA, (*id.* at 23–24), as JJSC

has done. And the defendants acknowledged the offending conduct, (*id.* at 25), as JJSC

has done. (S*ee* Def.'s Ex. C1 (Quarve-Peterson Complaint Response) at 1, 2, 6; Def.'s Ex.

A (Brost Aff.) ¶¶ 9–11.)

Although this lawsuit was the catalyst for JJSC's remediation efforts, an ADA

lawsuit was also the catalyst in *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018),

where the court found the plaintiff's parking-lot claims moot, noting, among other things,

that after the store became aware of the lack of van-accessible parking, it undertook

structural changes. (*See also* Def.'s Ex. D (*Davis*, 15-cv-4133 (LIB) (D. Minn. Mar. 6,

2017)) at 26.) JJSC likewise created structural changes by designating and demarcating a

parking space and access aisle. At the hearing on the instant motions, Plaintiff's counsel

argued that because paint is impermanent and subject to fading, Defendant has not

sufficiently shown how it will maintain the remedied conditions, and has thus not

demonstrated that the challenged conduct cannot reasonably recur. The Court disagrees.

The lack of prior complaints, JJSC's expeditious actions to remedy the alleged violations,

and Mr. Brost's assurances support a finding that the offending conduct is not reasonably

likely to recur. Therefore, Plaintiff's claims concerning the lack of a demarcated accessible

parking spot, van spot, access aisle, and signage are moot, and the Court lacks subject matter jurisdiction over them.

In his opposition memorandum, Dalton also invokes the slopes in the parking area and access aisle, arguing that there is no evidence of ADA compliance. (Pl.'s Opp'n at 6) ("Defendant has not provided slope measurements within the area of the parking space and access aisle.") Because he has not obtained all of his requested relief, he argues, his claims are not moot as to slopes. *Id.* Similarly, in his summary judgment arguments, Dalton asserts that a bench blocks the pathway from the parking space to the exterior toilet, violating accessible-route regulations and keeping his ADA claim alive in this regard. (Pl.'s Mem. at 20, 24; Pl.'s Reply at 7.) Because it appears that slopes and an accessible route are not necessarily moot, the Court addresses them below in the context of standing.

### 3. Standing

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2, cl. 1. In federal court, a plaintiff must have case-or-controversy "standing" to assert a claim—specifically, a plaintiff must show "(1) that he has suffered an 'injury in fact' that is 'actual or imminent, not conjectural or hypothetical'; (2) that the injury is causally connected to the defendant's allegedly illegal conduct and not to the 'independent action of some third party not before the court'; and (3) that 'it [is] likely, as opposed to merely speculative, that the injury will be 'redressed by a favorable decision.'" *Wieland v. U.S. Dep't of Health and Human Serv*s., 793 F.3d 949, 954 (8th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

13

(1992)).  Standing is determined as of the commencement of a lawsuit; therefore, courts consider the facts as of that time.  *Steger v. Franco*, , 892 (8th Cir. 2000).

First, Plaintiff's Complaint does not allege *any* deficiencies with respect to slopes and accessible routes at the Grand Wheeler Sinclair station.  Rather, as noted, Dalton alleges that the station lacks any reserved accessible parking spaces, (Compl. ¶¶ 12, 18(a)), and any reserved van-designated spaces.  (*Id.* ¶¶ 13, 18(a)). To support his argument that slopes and access aisles are part of his lawsuit, Plaintiff points to general allegations in the Complaint requiring Defendant to comply with all aspects of ADAAG 502, "including location, width, length, signage, slope, and presence of an access aisle." (*Id.* ¶ 18(a).)  He further points to general language alleging that the lack of a designated parking space and van space are "not be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at [the station]." (*Id.* ¶ 19.)  And he notes that for a parking space to be considered accessible, it must be located on an accessible route, it must be the shortest accessible route, there must be appropriate signage and an access aisle, and the space and access aisle must comply with sloping requirements.  (*Id.*)  This language, however, merely references the requirements of the ADA and the ADAAG. "Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing." *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018) (finding, on summary judgment, that the plaintiff's declaration did little more than describe the alleged violations, other than noting that he was deterred from visiting the store in the future).

14

Notably, Plaintiff does not allege that he *observed* any potential hazards with the parking lot slopes. And the only evidence in the record concerning slopes that were present on Dalton's January 16 visit is found in Dalton's deposition. Dalton acknowledged that he took no measurements in the parking lot at that time, but "know[s] there was a bit of a slope," based on his visual observation. (Browne Decl., Ex. B (Dalton Dep.) at 57.) But knowing "there was a bit of a slope" does even not indicate whether Dalton believed the slope in question violated the ADA.

Dalton also relies on a portion of Ms. Quarve-Peterson's Supplemental Affidavit— which, he argues, the Court should disregard for all other purposes—in which she acknowledges that the slope of the access aisle and parking space "slightly exceeds 2% at a few locations." (Supp'l Quarve-Peterson Aff. ¶ 13.) At the hearing on the instant motions, Dalton's counsel argued that this Court, in *Dalton v. Simonson Station Stores, Inc.*, No. 17-cv-4427 (SRN/LIB), 2018 WL 2338807, at * 3–4 (D. Minn. May 23, 2018), relied on evidence of noncompliant slopes from the defense expert in finding that the plaintiff's claim, as to that issue, was not moot on a motion to dismiss, and should do the same here.[2] The Court disagrees. Importantly, there are significant differences between the amended complaint in *Simonson Station Stores* and the Complaint here. In *Simonson Station Stores,* Dalton expressly pleaded the following: (1) the slopes at the gas station

---

[2] The Court disputes Plaintiff's characterization of *Simonson Station Stores*. In the Court's discussion of whether allegations of noncompliant slopes were moot, the Court did not refer to evidence from the defendant's expert. *See Simonson Station Stores*, 2018 WL 2338807, at * 3–4.

were noncompliant; (2) he provided measurements in support of his allegation; and (3) he had attempted to access the station. *Dalton v. Simonson Stationstores*, No. 17-cv-4427 (SRN/LIB), Am. Compl. [Doc. No. 13] ¶¶ 18, 27, 31, 33(d)); *see also Smith v. Golden China of Red Wing, Inc.*, No. 17-cv-1862 (JRT/HB), 2018 WL 3325907, at *3 (D. Minn. July 6, 2018) (finding that plaintiff sufficiently alleged standing for unencountered violations in parking lot, where the amended complaint sufficiently referred to issues with slopes). In contrast, no such allegations are present here regarding either slopes or an accessible-route violation. Again, Dalton does not allege that he encountered or observed these alleged violations on his January 16 visit.[3]

At the hearing on the instant motions, Dalton's counsel argued that Plaintiff could not have predicted the remedies that JJSC would undertake, and whether the resulting changes would be ADA-compliant in all respects. He contends that it is sufficient for purposes of standing and mootness to allege an ADA violation, as he did regarding a parking space and access aisle, and require compliance with all aspects of the ADA. The Court disagrees.

The Eighth Circuit has expressly declined to adopt the "deterrent effect doctrine," which finds a cognizable injury, sufficient to confer Article III standing, when a disabled person merely alleges that he or she is deterred from visiting a noncompliant business

---

[3] As noted, although standing is determined as of the commencement of the lawsuit, *Steger,* 228 F.3d at 892, even if the Court considered evidence concerning Dalton's subsequent visit to the station, he neither encountered nor observed noncompliant slopes or accessible routes in March 2019. In his Declaration, Dalton notes that a car blocked the then-unpainted accessible parking space, (Dalton Decl. ¶ 14), but does not state that he observed noncompliant slopes or mention the lack of an accessible route to the bathroom.

because of encountering barriers related to disability there. *Davis v. Anthony*, 886 F.3d 674, 678 (8th Cir. 2018). In a recent Eighth Circuit decision in a different lawsuit brought by Dalton, the court noted that "[t]hough lack of knowledge precludes standing, mere knowledge of barriers does not create standing." *Dalton v. NPC Int'l, Inc.*, __ F.3d __ , 2019 WL 3432474, at *2 (8th Cir. July 31, 2019). The court found that "[Dalton] has no standing to challenge the accessibility of Pizza Hut's entrances and exits, the signage, and the service counter height because he did not suffer injury by encountering these violations." *Id.* Likewise here, Dalton lacks standing to challenge the accessibility of Defendant's slopes and accessible routes because he never encountered them—and had no intention of even exiting his vehicle on January 16, when he pulled into the parking lot to access Google Maps.[4] (Browne Decl., Ex. B (Dalton Dep.) at 34–42.) Nor did he possess knowledge of these alleged violations. Accordingly, the Court finds that he lacks standing with respect to these claims, and dismisses his ADA claim without prejudice. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) (noting that when a federal court finds that a plaintiff lacks Article III standing, "generally the appropriate remedy is to dismiss *without* prejudice.") (emphasis in original).

For all of the foregoing reasons, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims. Defendant's Motion to Dismiss is therefore granted. However, because dismissal is without prejudice, the Court denies the portion of

---

[4] Although Dalton contends in his declaration that he did not feel comfortable exiting his vehicle at the station on January 16, (Dalton Decl. ¶ 5), in his deposition, taken earlier, he testified that he pulled into the parking lot solely to safely access Google Maps. (Browne Decl., Ex. B (Dalton Dep.) at 42–43.)

Defendant's motion seeking costs, as Defendant sought costs if the Court dismissed Plaintiff's Complaint with prejudice.

## B. Summary Judgment

Because the Court has granted Defendant's Motion to Dismiss, finding a lack of subject matter jurisdiction, it need not revisit the same arguments with respect to Plaintiff's summary judgment motion, as they apply equally.[5]  Accordingly, for all of the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied.

---

[5] Although the Court reaches its decision on grounds of mootness and standing, it also observes that Plaintiff has not demonstrated the lack of disputed issues of material fact. Defendant's expert, Ms. Quarve-Peterson, opines that even if the parking space and access aisle slopes slightly exceed the ADAAG requirement, remediation is not readily achievable.  (Supp'l Quarve-Peterson Aff. ¶¶ 12–14.)  Her opinion sufficiently creates a fact question on that issue—assuming that slopes are even part of the Complaint—and Plaintiff offers no expert opinion or other evidence on the matter.  In fact, he argues that such evidence is unnecessary, and that JJSC alone bears the burden of establishing whether changes are readily achievable.  But the Eighth Circuit requires the plaintiff to initially present evidence of suggested modifications or expert opinion.  *Wright*, 887 F.3d at 364. Plaintiff's only "evidence" is offered through attorney argument, with counsel suggesting the removal of a bench and the installation of a flat parking space and access aisle.  (Pl.'s Reply at 7–8.)  Dalton offers no evidence, nor any competent expert opinion, and fails to demonstrate the lack of a disputed fact issue.

**III.     ORDER**

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Defendant's Motion to Dismiss [Doc. No. 3] is **GRANTED in part** as to
   dismissal, and **DENIED in part** as to costs;

2. Plaintiff's Motion for Summary Judgment [Doc. No. 13] is **DENIED**; and

3. This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 13, 2019                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge